SANDERS *et al. v.* SANDERS *et al.*

[89 South. 261, No. 21590.]

1. WILLS. *As to undue influence testator's declarations at time of execution of will admissible as res gestæ.* .... .... .... .... ..

    On an issue *devisavit vel non,* where the ground of contest is undue influence brought to bear on the testator in the making of his alleged will, the declarations of the testator made at or about the time of the execution of the alleged will are a part of the *res gestæ, and are admissible as primary evidence—that is,* evidence of the truth of such declarations.

2 WILLS. *"Undue influence"* sufficient to set aside a will must be so strong that testator's will has been overcome by the will of another.

    It is not every influence which may be exercised over a testator in the making of his will which is undue influence. Such in-

fluence, in the meaning of the law, as will have the effect of set-
ting aside the alleged will must be so strong that the will of
the testator has been overcome by the will of another; that the
alleged will is not in fact the will of the testator, but the will
of another.

3. WILLS. *Testator's declarations held admissible to show whether
testator was suspectible of being unduly influenced.*

The declarations of the testator, not made at or about the time of
making the alleged will, to the effect that his wife and one of
his sons, who were the principal beneficiaries under his alleged
will, and who, it is charged, brought about such a will by un-
due influence over the testator, that the alleged will was not
his will, that his said wife and son had forced him to make it,
that his life with his second wife had been unhappy, that she
had driven his only child by his first wife away from home, and
other like declarations, were admissible in evidence alone for
the purpose of showing the state of mind of the testator at the
time of the making of his alleged will, as throwing light on the
question whether or not he was susceptible of being unduly
influenced by his wife and son; and for that purpose such dec-
larations were primary evidence.

4 WILLS. *Testator's declarations held inadmissible to establish their
own truth or falsity.*

Such declarations by a testator are not admissible for the pur-
pose of establishing the truth or falsity of the statement made,
as to which such unsworn statements are hearsay evidence,
and come within the rule against the same.

APPEAL from chancery court of Attala county.

HON. T. P. GUYTON, Chancellor.

Proceedings by Florence Sanders and others to probate
the will of James T. Sanders, deceased, opposed by George
T. Sanders and others. From a judgment against propo-
nents, they appeal. Reversed and rendered.

See, also, 86 So. 898.

*Dew & Guyton,* and *Teat & Potter,* for appellants.

The first six grounds of the assignment of error, being
similar, may all be discussed together. We know that the
rules of evidence permit a wide range when the issue is

fraud, duress, or undue influence. 40 Cyc. 1155. But, in this case, we contend that all the evidence concerning the state of feeling between the contestant, Mrs. Everson, and the proponents, Mrs. Florence Sanders and Joe Sanders, throws no light whatever on the question whether fraud or undue influence was exerted, and that all such testimony is therefore immaterial and irrelevant. 40 Cyc. 1155B.

The rule given in 40 Cyc. 1162 (g), note 71, and text of this note, and also in 40 Cyc. 1166, note 90, and text to this note, seems to refer to a state of feeling of hostility between the proponents on one side and the contestants on the other side. When such is the case it would seem that the evidence is admissible. But such is not the case here.

We submit also that the court erred in permitting several witnesses to testify, over objection, as shown by the record, as to declaration of the testator concerning the fall of his daughter, Mrs. Everson. There is so much of this that we will make no attempt to set it out or to refer to the many places in the record where it will be found. It is all through the record. These declarations on the part of the testator, in no way concerned this will offered for probate, nor does it shed any light on the execution of that will, its validity or invalidity. It was highly prejudicial to the proponents of the will, and furnished the very gist of the contestants to pray on the sympathies of the jury in a high degree. It was a touching story, and all this is hearsay evidence, and goes before the jury as an established fact. The very fundamental reason for admitting any declarations on the part of the testator is for the purpose of showing what was brought to his mind and how it acted on his mind. But all these declarations, so far as we can find authority for, must relate to the will, its contents, or its execution. In *Winston* v. *Elliott,* 53 So. (Ala.) 750, the court held that declarations of the testator as to where he got the money to purchase certain land was inadmissible, it not tending to show either mental incapacity or duress, and had nothing to do with the execution of the will. Furthermore, these declarations of the testator regarding

his daughter were made some five or six years before the execution of this will and are therefore too remote in point of time, and are inadmissible on this ground. In *Sheehan* v. *Kearny,* 21 So. 41, this court admitted declarations of the testator before, at the time and subsequent to, the execution of the will; but these declarations concern the will, its contents, or its validity, and are not too remote. We find no authority holding such stories as these in this case shown as admissible.

The court also erred in permitting the witness, Wilburn Fowler, to testify, over objection, that the testator was a wealthy man. The amount of decedent's estate is not a question that has any bearing either on the question of mental capacity or that of undue influence, and evidence of the amount of his estate or tending to show the amount thereof is not admissible. 40 Cyc. 1155, note 39, on page 1156.

The court likewise erred in permitting the witness Mrs. Edna Sanders to testify, over objection, that she saw the testator count out seven thousand dollars in money at his home. 40 Cyc. 1155, note 39, p. 1156.

The peremptory instruction requested by the proponents should have been granted. The evidence submitted at the trial was insufficient to warrant the court in letting this case go to the jury at all on any issue. As to the issue of mental capacity, the two subscribing witnesses, Taylor and Sims, the family physician, Dr. Claitor, the drafts-man of the will, Brown, the named executor, Bailey, and every other witness called for either the proponents or the contestants who gave evidence concerning this issue testified directly or to facts that would show that the testator was of that sound mind and memory and understanding sufficient to make a will, and there was no issue on this question for a jury to determine presented by the evidence. No witness testified to any fact; when such is the case, it is the duty of the court to take the case from the jury by peremptory instruction. 40 Cyc. 1320.

On the question of undue influence, we submit that there was not sufficient evidence to justify the verdict of the jury, and that such a verdict in view of the evidence cannot be allowed to stand. All the witnesses present at the execution of the will, without exception, give in evidence no fact that has any tendency to show that the testator was unduly influenced. On the contrary their testimony shows that no outside influence was in any way brought to bear on the testator.

The vice of instrument No. 8 given for the contestants is that it is at least misleading, and puts upon the proponents a higher burden of proof than the law requires. This instruction not only requires the prononents to show by a fair preponderance of the evidence the absence of undue influence and that the testator had sufficient mental capacity, but it goes further and requires the proponents to show by a preponderance of the evidence, that the instrument offered was the free and voluntary act of James Thomas Sanders.

It is not every influence that is undue. From this instruction the jury might well infer that if anybody talked with the testator about making a will, suggested to him the propriety of making a will, advised him in regard thereto, and especially if his wife talked with him about the will and her necessities and discussed the matter generally with him or in any way, then the will was not freely and voluntarily made, of course, it must, in a sense, be the free and voluntary act of the testator; but the law does not require that there shall be no influence whatever brought to bear on the testator. *Gillis* v. *Smith,* 114 Miss. 665, 75 So. 451; *Burnett* v. *Smith,* 93 Miss. 566, 47 So. 117.

It was error to grant instruction No. 11 for the contestants. This instruction is too long and tedious to understand. It is one that relates to the mental capacity of the testator, and raises no question of undue influence. This instruction has no place in this record for the lack of proof on which to base it.

The testator is not required to have the mentality of a "Philadelphia lawyer" or a "Saint of old" in order to be able to make a will. He is not required by law to "understand fully the business in which he is engaged and all of the elements thereof." The vice of this instruction is that (1) it requires too high a degree of mentality on the part of the testator; (2) it has no application to the facts of this case, there being no facts shown by the evidence upon which such an instruction can be predicated; and (3) it requires the proponents to establish the will by a "clear" preponderance of the evidence instead of a "fair" preponderance; and (4) this instruction leads off in a way calculated to cause the jury to require a higher degree of proof than the law requires and in this respect has appearance of being an argument of the court directed to them as jurors.

In 2 Words and Phrases, p 1221, clear preponderance as used in an instruction given, while not an error of law, is yet characterized as equivocal and mischievous, in that it conveys to the average juror's mind an idea of undue emphasis of certainty, beyond a doubt. In a case like the one at bar this instruction should not be given, the contestants have won their case on a batch of instructions calculated to mislead the jury, and put in evidence a sad story of a young girl to excite their sympathies. See, also, *Ward* v. *Ward,* No. 21320, decided February 28, 1921.

Instruction No. 12, given for the contestants is erroneous. This instruction is also a long one, tedious and hard to understand and grasp. The mental and physical condition of the testator before the signing of said will, without any limitation as to time, should not be considered by the jury on the issues of this case; yet the court instructs them to do so. It is the conditions which exist at the time of execution that the jury considers. *Scally* v. *Wardlow,* 86 So. 625; *Ward* v. *Ward,* No. 21320, February 28, 1921.

Instruction No. 14, given for contestants is erroneous in that it assumes that the will offered for probate is unnatural and inconsistent with the duty of the testator with

reference to his property and family, and is one of the instructions set out and specifically condemned in the recent *Ward* v. *Ward case, supra.*

Instruction No. 20 given for contestants is likewise erroneous in that it assumes that the will offered is unnatural, and tells the jury that this alone requires the proponents to give a reasonable explanation therefor, and is also condemned in the case of *Ward* v. *Ward, supra.*

On the whole, the record shows that the jury was erroneously instructed as to the law of the case by many of the instructions given for the contestants, appellees here. A careful reading of the record of the evidence will fail to disclose any evidence from which the jury would be authorized in finding that the testator was of insufficient mental capacity to make a will or that his will had been dominated by others to such an extent that this was not his will but rather the will of his wife and son Joe. It will also show that by reason of these long, inaccurate, incorrect, and misleading instructions, the contestants were afforded the opportunity to pray on the sympathies of the jury very heavily by rehearsing to them all about the "fallen girl" and her many trials and difficulties when on a visit to her father about six years before the will was written. The appellants submit that the peremptory instruction requested by them in the trial court should have been given, and they therefore ask that such judgment be rendered in the supreme court as should have been rendered in the trial court and that judgment final be entered for the proponents establishing the instrument offered for probate in this case as the true last will and testament of James Thomas Sanders, deceased.

*S. L. Dodd, Fulton Thompson* and *R. H. & J. H. Thompson,* for appellees.

The issue in the case being, first: was the decedent or was he not mentally capable of making a will at the time of the execution of the writing propounded as his will; and

second, was or was not the execution of the writing pro-
cured by undue influence? It. follows that the parties
were entitled to and were given a wide scope from which
to gather evidence pertinent to the issues than is given in
ordinary cases. In a case like the one at bar, evidence is
competent if it tends to prove any fact or circumstance
which elucidates in any degree the points at issue or either
of them.

The question of the admissibility of the pertinent decla-
rations of a testator, made after the execution of the will,
in a contest of the testament, is fully discussed in the books
on evidence, but none of them are particularly informative
and the same is true of many court decisions on the sub-
ject.

In considering the question, too much emphasis cannot
be placed upon the fact that he who has executed the will,
while yet alive, is the only person having a vested interest
in the property devised, he could revoke the will and he is
interested to declare the truth. He of all persons best
knows the facts touching its execution. One of the leading
English cases is *Reel* v. *Reel,* 1 Hawks 268.

In *Howell* v. *Barden,* 3 Dev. (N. C.) 442, the declaration
of a testator affirming that the will had been obtained by
undue influence was admitted in evidence and *Rell* v. *Rell,*
followed the court adjudging that such declarations were
exceptions to the hearsay doctrine. *Beadless* v. *Alexan-
der,* 9 Baxter (Tenn.) 604; *Lynch* v. *Lynch,* 1 Lea (Tenn.)
529, are to the same effect. *Dennie* v. *Weeks,* 51 Ga. 24.

However, the question is settled in this state. In *Shee-
ham* v. *Kearney,* 82 Miss. 688, s. c., 21 So. 41, this court
decided to quote the third paragraph of the syllabus: "The
declarations of a testator touching his testamentary inten-
tions are admissible in evidence on the issues of testamen-
tary capacity and undue influence (the very issues in the
case at bar) whether made before, at the time, or after the
execution of the will." The argument of opposing counsel
wherein they claim that the declarations of the alleged tes-
tator made before the execution of the alleged will and

other testimony were inadmissible is in the face of an authority cited by them. 40 Cyc. 1155.

While declarations of a testator which are no part of the *res gestae,* and are mere hearsay are not admissible as direct evidence, they are received in evidence and are admissible to show: "(a) the state of the testator's mind; (b) to prove or disprove his weakness of mind and consequent susceptibility to undue influence; (c) his feelings and attitude towards, and relations with, persons mentioned in or excluded by the will, and (d) his intentions as to how he should dispose of his property, as these matters are important in determining whether the dispositions he made are natural and consistent, or the product of fraud or undue influence. 40 Cyc. 1157, 1158.

Remoteness. Of course a solitary incident, which occurred long before the making of the will in question, might reasonably be held to be immaterial, but where a course of conduct and the continuous existence of feeling and influence are sought to be shown, the longer their continuance the more influential they become.

The rule announced in some authorities touching remoteness is this: There is no fixed rule as to what precise point of time is too remote and the matter rests largely in the discretion of the trial court. *Huffman* v. *Graves,* 245 Ill. 440, s. c. 92 N. W. 289; *Matter of Higgins,* 156 Cal. 257, s. c. 104, Pac. 6.

The evidence is sufficient to sustain the verdict. That the evidence, especially when sanctioned by the chancellor who saw and heard the witnesses, is amply sufficient to support the verdict of the jury, seems manifest.

The peremptory instructions asked by proponents. We feel assured this court will not adjudge that the proponents were entitled to the peremptory instruction asked by them. We have hereinbefore presented our views on the sufficiency of the evidence to support the verdict and judgment in contestants' favor and what we have said on the subject is applicable to the proponent's peremptory instruction.

The argument of opposing counsel on the subject of undue influence is based alone on the testimony offered by proponents, and almost, if not entirely, ignores the testimony offered by the contestants; in fact it ignores every fact and circumstance proved which favors the contestants.

It is not essential for the contestants to prove that undue influence was affirmatively exercised by acts performed or words spoken during the writing or the execution of the alleged testament; if acts performed and words previously spoken were influential in the production of the alleged will it is just as invalid as if the big stick was flourished during its writing and execution.

### The Instructions.

The instructions given the contestants assigned for error are No's 8, 11, 12, 14, and 20, and we will now notice each of them in their order: Instruction No. 8 (record, p. 25), is certainly not erroneous. The will has never been probated, and the burden of proof, by statute (Code 1906, section 2000) was on proponents. Complaint is made by opposing counsel because the instruction was to the effect that the alleged will was invalid unless it were shown to have been the free and voluntary act of the decedent.

Of course, influence may be "due" or "undue," legitimate or illegitimate. Touching the subject of influencing the execution of wills the line separating due from undue influence is crossed when the product is not "the free and voluntary act of the decedent," but the will of the influencing party. The words of the instruction most earnestly complained of by appellants correctly announced the true legal test to be applied to the writing involved in this suit. However, if there be error or semblance of error in the instruction the same was cured by the ninth instruction given for the proponents. The two instructions read together propounded the law correctly; they are not contradictory.

The eleventh instruction given contestants seems to be above just exception; we submit it is not justly subject to the criticisms passed upon it by proponent's solicitors. The first question of fact submitted to the jury by the instruction is, we think, an answer to the objection thereto made by appellants. The instruction did not assume to be controlling, nor was it even directory, unless the jury found from the evidence that the decedent, before and after the signing of the alleged will, was a confirmed, hopeless invalid and had in some degree lost his mental powers or his mind had become impaired. The balance of the instruction is unobjectionable when read, as it should be in connection with such a finding.

Instruction No. 12, given the contestants is complained of by appellants. There is not a fact hypothecated in the instruction not left to the determination of the jury and not one, we submit, wholly unwarranted by the evidence. There is testimony which at least tends to prove each of them.

Instructions No's 14 and 20, given the contestants are not subject to the objections made to them by appellants. Each of them expressly leaves to the jury the question which opposing counsel claim they assume.

If it be true, as stated by opposing counsel (we have not verified the statement), that instructions No's 14 and 20 were condemned in *Ward* v. *Ward,* it does not follow that the decree appealed from in this case should be reversed because of them. An instruction entirely correct, if given, in one case may be grossly erroneous if given in another.

If error can be predicated of either instruction 14 or 20, given the contestants when viewed alone, the error was cured by the second instruction given the proponents. Read them as if they were but one and it will be seen that the jury were not erroneously instructed.

On the entire case, we submit, that the evidence taken as a whole is sufficient to maintain the verdict; that reversible error will not be found in any one of the instructions, and when considered together, those given for the propo-

nents along with the ones given for the contestants of which complaint is made, that the court should affirm the decree of the court below, from which the appeal is prosecuted.

ANDERSON, J., delivered the opinion of the court.

This is an issue *devisavit vel non*. It was decided in the court below against the proponents of the will, the appellants, and from that judgment they prosecute this appeal.

The testator James T. Sanders, left a widow and three children, a daughter by his first wife, Mrs. Everson, and two sons by his second wife, George and Joe Sanders. In his alleged will he devised and bequeathed all of his property, consisting of land and personal property (except one hundred and fifty dollars which he bequeathed to his daughter, Mrs. Everson, and a like amount to his son, George Sanders), to his widow, Mrs. Florence Sanders, for her lifetime, with remainder in fee to his youngest son, Joe Sanders. When the alleged will was presented for probate by the executor named in it, his daughter, Mrs. Everson, and his son, George Sanders, who were bequeathed only one hundred and fifty dollars each, filed a *caveat* against its probate on two grounds: First, that at the time of its execution the testator was mentally incapable of making a will; second, that his widow, Mrs. Florence Sanders, and his youngest son, Joe Sanders, the two principal beneficiaries under the alleged will, by persuasion and undue influence, induced him to execute the same. Therefore the child by his first marriage, Mrs. Everson, and his oldest son by his second marriage, George Sanders, were arrayed on one side as contestants of the will, while the widow and his youngest son by his second marriage, Joe Sanders, were arrayed on the other side as proponents; the latter being the appellants, the former the appellees.

The appellants contend that the court below erred in refusing to direct the jury to return a verdict in their favor because they say there was no evidence even tending to establish the issues in favor of the appellees. On the other

hand the appellees contend there was sufficient evidence to go to the jury and therefore the verdict and judgment ought to stand.

So far as the question of mental capacity of testator is concerned, there was no evidence introduced by either side tending in any degree to establish that at the time of the execution of the alleged will the testator was not fully capable of comprehending the full purport and effect of what he was doing. On the contrary, all of the evidence having any bearing on the question affirmatively shows that at the time of the making of the alleged will the testator was capable of and did understand the purport and effect of what he was doing.

On the question of undue influence the evidence for the proponents was to the effect that the alleged will was made on September 11, 1919, and the testator lived until November 10, 1919, two months; that at the time of the execution of the paper claimed by the proponents to be the testator's will and for some time prior thereto he was and had been afflicted with cancer of the stomach; that on the day the alleged will was executed the testator, under the advice of his physician, Dr. Claitor, was preparing to leave his home in Attala county to go to the Baptist Hospital in Jackson, Miss., for examination, and before going he expressed a desire to make his will; that accordingly preparations were made for that purpose, and before leaving for the hospital he executed the paper claimed to be his will by the appellants in the presence of at least four disinterested witnesses, the two subscribing witnesses, and Mr. Bailey, the executor named in the will, and Mr. Brown, who drew the will; that in addition his physician, Dr. Claitor, was present part of the time. All of these witnesses testified that the testator was sitting up all the time during the preparation and execution of the alleged will; that he stated to Mr. Brown, the draftsman of the will, exactly what disposition he wanted to make of his property, and the will was made as he directed, and was read over to him in the presence of all four of said witnesses, and,

when asked if it was what he wanted, he replied that it was; that during the preparation and execution of the alleged will the appellants, his wife, and his son Joe, the principal beneficiaries thereunder, were not present, although they were in or about the house; that on the afternoon or evening of the day the alleged will was made the testator was driven to the railroad station in a car and went to Jackson to the Baptist Hospital; that he went out and got in the car himself; that, although he was seriously ill with cancer of the stomach, he conversed freely and intelligently and understood what he was doing and saying.

The testimony on behalf of the contestants, the appellees, tended to establish the following facts: That during the preparation of the will the testator left the room and had a conversation with his son Joe; that when he married the last time his daughter, Mrs. Everson, the only child by his first wife, was about three years old; that when she had about reached her maturity her stepmother drove her away from home; that her stepmother had always disliked her and had done everything she could to prejudice the minds of her husband and sons against her; that her dislike for her stepdaughter was so great that she never would permit her to return to her home even for a visit; that the wife, Mrs. Florence Sanders, had great influence over her husband.

The only other evidence on the issue of undue influence was the declarations of the testator testified to by witnesses for the appellee, which was to the effect that between the time of the execution of the alleged will, to-wit, September 11, 1919, and the death of the testator on November 10, 1919, thereafter, the testator stated to them that he lived happily with his first wife; that during her lifetime he was a church member and a regular attendant at church services, and lived an upright Christian life; that, on the other hand, his second wife had made his life a "hell on earth;" that the alleged will which he had signed was not his will; that he had been forced to make it by his wife and his son Joe; that the latter said to him that if he did not

make it as it was made he would leave his father's home; that the only members of the household of the testator were his wife and his son Joe; that his daughter, Mrs. Everson, lived in the north somewhere, and his son George was married and living in a home of his own; that he said he loved his daughter, Mrs. Everson, as well as his other children, and at different times stated he intended to visit her.

It was shown by the wife of the appellee George Sanders that in 1918 she was in the home of the testator and saw him count out and put away about seven thousand dollars in money.

We will first consider whether the declarations of the testator (not made at or about the time of the making of the alleged will, and therefore part of *res gestae*, but beginning five or six years before, and continuing from time to time up to and near the time of his death) that his life with his second and last wife had been unhappy, had been a "hell on earth," that he loved Mrs. Everson, his daughter by his first wife as well as he did his other children, and his declarations made between the time of the execution of the alleged will and his death, but not at the time of its execution, that he had not made the will he wanted to make, but had been forced by his wife and his son Joe to make the will he did make, were admissible in evidence on the question of undue influence for any purpose, and, if so, for what purpose.

In the opinion of the court the great weight of authority, both as to number and as to reasoning, is to the effect that such unsworn declarations of a testator are admissible in evidence alone for the purpose of showing the state of mind of the testator at the time of making the alleged will, as throwing light on the question whether he was at that time susceptible of being duly influenced by those claimed to have exercised such influence over him, and for that purpose such declarations are primary evidence; that for any purpose they are simply hearsay evidence and come within the rule against such evidence. To put it differently, such declarations testified to by witnesses are ad-

mitted as primary evidence to show the state of mind of the testator, but not for the purpose of showing the facts which are therein declared.

There is no good reason why such declarations should not come within the rule against hearsay evidence; while, on the other hand, there are substantial reasons why they should. They are not declarations against interest, for at the time made the testator has no interest either one way or the other; he has the absolute power to revoke his will at any time while living. They are not accompanied with the sanctity of an oath, and may have been made by the testator to mislead, instead of to state the truth, and the recollection of the witness or witnesses to whom made may be faulty, especially after the lapse of considerable time, and there is the inducement on their part to fabricate, for, since the mouth of the declarant, the testator, has been closed by death, they run no risk of contradiction by him on the witness stand; and, furthermore, where the issue is undue influence, as here, the beneficiaries under the alleged will charged to have exercised such undue influence are incompetent as witnesses under our statute; they must sit and hear witnesses testify to unsworn statements of the testator to the effect that they forced their will on him; they cannot go upon the witness stand and contradict such testimony.

We deem it unnecessary to again review the authorities bearing on this question, for that was very ably done by Judge SYKES, who wrote the opinion for the court in the case of *Moore* v. *Parks,* 122 Miss. 301, 84 So. 230. Among other things, the court said in that case:

"As stated elsewhere in this opinion, these declarations are held admissible upon the question of testamentary capacity by all the courts, and a majority of the courts, our own court being among the number, hold them admissible upon the question of undue influence. In both of these instances, however, these statements are admitted as testimony, not for the purpose of establishing the truth or falsity of the statements made, but merely that the jury may

consider them along with other testimony and from all of the testimony arrive at a conclusion as to the mental con-dition of the testator at the time of making the will, viz., whether or not he was sane or unduly influenced at that time. The inquiry in those two instances is as to the mental condition of the testator. The truth or falsity of the statements is not under consideration at all. *Sheehan* v. *Kearney,* 82 Miss. 688, 21 So. 41, 35 L. R. A. 102."

*Moore* v. *Parks, supra,* is directly in point, and is de-cisive of this question in favor of the contention on behalf of appellants, notwithstanding the question dealt with in that case was declarations of the testator as to testamen-tary intentions, instead of declarations as to undue influ-ence, as here; for the same principles of evidence apply to both; there can be no difference. Appellees' counsel cite (among other cases) to sustain their contention *Sheehan* v. *Kearney,* 82 Miss. 688, 21 So. 41, 35 L. R. A. 102; *Reel's Ex'rs* v. *Reel,* 8 N. C. 248, 9 Am. Dec. 632. We do not care to add anything to what Judge SYKES said about *Shee-han* v. *Kearney, supra,* in *Moore* v. *Parks, supra,* except to say that Judge WHITFIELD in *Sheehan* v. *Kearney* in-dorses the rule laid down by the annotator in 3 Am. Dec. 397, where the rule is stated in this language:

"The principal fact to be established is the mental con-dition of the testator at the time of making his will; and for this purpose evidence of his declarations, previously and subsequently, directly bears on the question, and must be relevant and competent."

In that same note, 3 Am. Dec. 397, the writer of the note says this with reference to *Reel's Ex'rs* v. *Reel, supra:*

"In *Reel* v. *Reel,* 1 Hawks, 247, evidence was admitted where duress and incompetency of the testator was charged subsequent to the execution of the will. The court in this case dissented from *Jackson* v. *Kniffen* (3 Am. Dec. 390), and from *Smith* v. *Fenner* (1 Gall. 170) ; but on the distinc-tion pointed by SELDEN, J., there was no necessity for this, for, as there was a question as to the capacity of the testa-

tor in *Reel* v. *Reel,* the evidence was properly admitted on that ground."

Eliminating the declarations of the testator as evidence of the truth of the facts therein declared, and, on the other hand, giving them their full weight for the purpose of showing his mental attitude at the time of the execution of the alleged will, was there sufficient evidence left to go to the jury on the issue of undue influence?

It may be conceded for argument's sake that from the declarations of the testator the jury might reasonably have inferred that the testator was very susceptible to the influence of his wife and son Joe. Then add to this the evidence remaining that the testator consulted with Joe before making the alleged will, that his wife seemed to have great influence over him, that his wife hated his daughter, the child of his first marriage, and drove her away from home, and would not let her return even on a visit, and that his wife was violent in temper and unreasonable; and still there was no substantial evidence tending to show that the alleged will was procured by the undue influence of the testator's wife and son Joe.

In considering this question, it must be borne in mind that every kind of influence which one person may have on another is not, in the sense of the law, undue influence. In order to set aside an alleged will on the ground that its execution was procured by the undue influence of another, the evidence must show that such will was not the will of the testator, but the will of such other person; that, in other words, the will of the testator was so dominated and controlled that it became the will of another person. It is true that undue influence may be proved by circumstantial evidence alone; but it is also true that the circumstances in evidence must be so strong as that they tend to establish the issue on behalf of the party offering such evidence. Where they are so weak that the issue is left in a state of mere conjecture and doubt, then there is not a sufficiency of such evidence to be submitted to the jury. In this case there is an entire absence of any evidence whatever (ex-

cept his own unsworn declarations which as we have held were not proof of the fact) that the testator's wife and his son Joe so influenced him in the making of his alleged will, as that it was not his will, but theirs. The fact that the wife of the testator hated her stepdaughter, Mrs. Everson, is a circumstance of little, if any, force, especially in view of the evidence that under the alleged will she was provided for to exactly the same extent as was George Sanders, one of the sons of the last marriage. And the same is true of the other circumstances in the case, taken either separately or all together. The fact (if it was a fact) that the testator's wife had great influence over him, and that he consulted with her and his son Joe before making the alleged will, and that they had great influence on his mind in shaping the same, would not even tend to show undue influence —such influence as to show that their will became his will.

The statement by the testator at the time of the making of the alleged will in the presence of several witnesses, but in the absence of his wife and son, Joe, that he gave his property to Joe because he knew he would be good to his mother, was admissible to prove that fact, because a part of the *res gestae.* Taking that in connection with the other evidence for the appellants as well as that for the appellees, and giving the latter its full significance, as proving every fact it tends to prove, and there was no question for the jury; the court should have directed them to return a verdict, for the appellants as requested on their behalf.

Reversed, and judgment here for appellants.

*Reversed.*