HAWKINS, Justice,
for the Court:
Steve Varvaris appeals from a decree of the Chancery Court of the 1st Judicial District of Hinds County rejecting a will he filed for probate. We find no merit to his assignments of error, but reverse and remand because of the erroneous findings by the chancellor in this case that a confidential relationship existed between the testator Emanuel Varvaris and his son Steve.
FACTS
Emanuel Stavros Varvaris died June 30, 1981, at age 80, or thereabout. He had two children, Jean, Mrs. Mike Kountouris, and Steve, whose wife is Estelle. On November 30, 1966, Emanuel executed a will devising all of his property to Mrs. Mike Kountouris. The will stated the reason for making no provision for his son was that he had already given him considerable realty appraised at more than $86,000, and this was more than fifty per cent of his estate.
Emanuel moved to Jackson, MS, in 1947, and lived in his own home until 1960, when his wife died, and then he moved into Jean’s home in Jackson. Thereafter he made his home with Jean, where he had a private room and kept his belongings.
On August 15,1978, Emanuel was placed in the Crossgate Manor Nursing Home in Rankin County, where he lived until taken to the Hinds County Hospital shortly before he died. He shared a room with another person there at the nursing home. His personal belongings were kept in his room in his daughter’s house.
Percy Stanfield, an attorney in Jackson, was frequently employed by Steve over the years. In transactions between Steve and Emanuel in which Stanfield performed legal services, Steve paid the fee. Emanuel never paid Stanfield any fee.
A few days prior to February 20, 1981, Steve telephoned Stanfield and said his father wished to see him. Stanfield asked, *275 “What for?” and Steve replied he did not know. Stanfield told him to find out. A day or two later, Steve contacted Stanfield again and told him his father wanted to see him about making a will. Stanfield, who explained by saying he did not know the way to the nursing home, asked both Steve and Estelle to go with him. Upon reaching the nursing home, Steve and Estelle went and got Emanuel from his room, and after momentarily talking with all three of them, Stanfield asked Steve and Estelle to leave so that he could talk to Emanuel alone. He talked with Emanuel 20 or 30 minutes, and satisfied himself Emanuel had testamentary capacity.
According to Stanfield they talked generally about Emanuel’s likes and dislikes and something about the Greek community and the old country. Stanfield said that he knew Emanuel could see objects but could not read and he treated him as essentially blind. Stanfield made some notes in his own handwriting while talking to Emanuel. He noted that the executor should be Steve or the Chancery Clerk. He noted Emanuel did not like the nursing home and was resentful. Stanfield testified he asked Emanuel if Steve had promised to take him out of the nursing home, and Emanuel “indicated” no promises or threats had been made. Stanfield said Emanuel wanted Steve to sign the will, but he told him Steve could not do it, but Estelle could. He determined from his conversation what Emanuel wanted in his will and returned to Jackson and prepared it.
A day or two later Stanfield telephoned Steve to get Emanuel to his office, and Steve and Estelle brought him.
Stanfield asked Steve to leave his office, and he talked to Emanuel in the presence of Estelle. Stanfield read the entire will, and Emanuel agreed to it, according to Stanfield, and said this was the way he wanted his property to go. Stanfield called his law partner, David E. Holderfield, into his office, and the two of them witnessed the will, with Estelle signing Emanuel's name.
This will specifically revoked all prior wills. It bequeathed Jean a diamond in her possession worth $38,500, “notwithstanding that she had me placed in a nursing home against my wishes and that I have given her primarily in stocks, bonds and cash in excess of $130,000, all of which represents more than a fair share of my estate.” All the rest of Emanuel’s property was devised to Steve, in this country or on the Island of Patmos, Greece. The will suggested that the executor employ Stan-field as attorney.
Steve paid Stanfield for the legal services rendered in connection with this will.
On February 18, 1982, over seven months after Emanuel’s death, Jean filed the 1966 will for probate in the Chancery Court of the 1st Judicial District of Hinds County, it was admitted to probate in common form, and letters testamentary were issued unto her.
On March 18, 1982, Steve filed a motion to dismiss the entire proceedings, asserting the Court was without jurisdiction because Emanuel was a resident of Rankin County at the time of his death. A copy of the 1981 will was attached to the motion. On May 20, 1981, the chancellor entered an order denying the motion.
On August 4, 1982, Steve filed a petition to dismiss the executrix, and for probate of the 1981 will. The petition alleged the 1966 will was revoked by execution of the later will. There was attached to the petition an affidavit by Stanfield dated July 26, 1982, that the 1981 will was properly executed and Emanuel was of sound mind when he executed the will. The form of this affidavit complies with the statutes for admitting wills to probate in common form. See: Miss.Code Ann. §§ 91-5-1; 91-7-7; 91-7-9 (1972). There was also attached to the will affidavits of Estelle, Stanfield and Holder-field dated March 11, 1982, to the same effect. Estelle’s affidavit also recited that she signed the will at the testator’s request.
On August 31, 1982, Jean filed an answer to the petition, alleging affirmatively that on February 20, 1981, Emanuel lacked *276 testamentary capacity and also that the last will was procured by “fraud and/or undue influence.” The answer then asked that Steve’s petition be dismissed.
In this status the matter came on for hearing before the chancellor on March 16, 1983. At the hearing Steve’s counsel stated they were not contesting the validity of the 1966 will at this hearing. Counsel for Jean stated that the issue before the court was whether the 1981 will was procured by fraud and undue influence. The 1966 will was then offered and received into evidence as the will of Emanuel.
Steve’s counsel then called Stanfield as his first witness, who testified as above related. At the conclusion of his direct examination, the 1981 will was offered for identification, and was marked as “Contestant’s Exhibit # 3 for Identification Only.”
Stanfield testified that he treated Emanuel as essentially a blind person who could not even see well enough to write his own name. On cross-examination Jean’s lawyer developed from Stanfield that a number of years prior to Emanuel’s death there had been personal property exchanges, such as vending and amusement machines, between Emanuel and Steve. Records of transfer in the early 1970s of a Cadillac and GMC pick-up were also introduced.
Also on cross-examination it was developed that on February 20, 1981, the same date as the will, Stanfield as notary public notarized two deeds dated February 20, 1981, and acknowledged on the same date, supposedly bearing the signature of Emanuel. Stanfield attempted to explain the discrepancy of two deeds being signed by Emanuel on the same day the will was executed by Estelle by stating the deeds were already signed when they came to his office. The court sustained an objection to this explanation on the ground a notary cannot impeach his own official act.
Holderfield followed as a witness. His testimony was brief, and he agreed on cross-examination that Stanfield was Steve’s primary lawyer. Stanfield and Holderfield both also testified of Steve being of a domineering disposition, and of a nature that his presence created some apprehension.
Dr. Richard E. Schuster, an attending physician at the nursing home, then testified as a witness for Steve. He testified that Emanuel, approximately 80 years of age, seemed in possession of his faculties for a person of that age. He had the normal aging process for an 80-year-old man, and was quite hard of hearing, which was also normal for his age. Although he had never tested him, and while he stated that Emanuel did have a visual problem, Dr. Schuster was of the opinion he would have been able to sign his name on February 20, 1981. In walking Emanuel was able “to avoid common danger.” Dr. Schuster was under the impression he had seen Emanuel carrying a newspaper.
Mrs. Anna Stevens, a physical therapist and practical nurse, testified “Emanuel knew what was going on,” and she believed he was of sound and disposing mind. Emanuel had told her he was not happy at the nursing home, and that if he had met her before he came there, he would have signed everything over to her.
Estelle was the final witness for Steve. She said she visited Emanuel every week or ten days in 1980 and 1981, some times with and some times without Steve. On one visit she testified Emanuel wanted to know if they still used Stanfield as attorney. Emanuel then said he wanted to see him. Steve contacted Stanfield, who told Steve to find out exactly what Emanuel wanted. Emanuel then told Steve he wanted to make a new will.
She then related essentially the same factual development as Stanfield. She said Stanfield read the will in a loud tone to Emanuel, stopping at the end of each paragraph to ask him if he understood, and was this what he wanted. She said Stanfield then asked him if he had been pressured into making the will, and Emanuel replied he was making it of his own free will, and he did not get any pressure from anyone.
She said she executed the will because Emanuel said he could not see to sign it, *277 and specifically asked her to sign his name for him.
There was no attempt while Estelle was on the witness stand to make any explanation of the execution of the two warranty deeds on the same date as the will was executed.
Following her testimony both sides rested.
The chancellor found inter alia Emanuel went to the nursing home in 1978, not intending to stay, was unhappy from time to time and would have liked to have returned to Mrs. Kountouris’s home. There was no evidence Mrs. Kountouis neglected her father, she did visit him and on occasion he visited in her home, but she was unable physically to take care of Emanuel at all times.
The chancellor was of the opinion the testimony showed a confidential relationship between Emanuel and Steve.
He also found Stanfield was Steve’s principal attorney for twelve years preceding, that Steve took Stanfield to the nursing home, then took Emanuel to Stanfield’s office, and that Estelle signed the will. He further found that Steve or Estelle paid Stanfield’s fee for the will, and that the above demonstrated undue influence. The chancellor also found it most significant that there were transfers of property on the same date that Estelle signed the will.
He denied probate of the 1981 will.
On April 18, 1983, a decree was entered finding the above facts, dismissing the petition filed by Steve to probate the 1981 will, and directing that Jean continue serving as executrix under the conditions of the will theretofore admitted to probate.
Steve has appealed.
LAW
WAS REVERSIBLE ERROR COMMITTED IN NOT HAVING A JURY TRY THE ISSUE
Although his trial counsel filed no request therefor, and indeed never once hinted at any desire to have a jury try any factual issue, different counsel for Steve has urged on appeal the chancellor nevertheless should have impaneled a jury to decide whatever factual issue was pending before him on March 18, 1983. Further, that reversible error was committed by the chancellor in doing so.
Steve was not a contestant of the 1966 will; he was a proponent of the 1981 will. Miss.Code Ann. (1972) § 91-5-3 provides a will may be revoked by making a subsequent will, and revocation occurs even though the latter does not specifically revoke the former if the provisions of the two instruments are inconsistent. Ramsey v. Robinson, 346 So.2d 379 (Miss.1977); Crawford’s Estate v. Crawford, 225 Miss. 208, 82 So.2d 823 (1955); Wheat v. Lacals, 139 Miss. 300, 104 So. 73 (1925). In this case the 1981 will specifically revoked all previous wills. Therefore, if the 1981 will was true and genuine, there was no issue to be tried as to the validity of any previous will.
Counsel for the 1981 will could have filed for probate in common form. See: Miss. Code Ann. §§ 91-7-7; 91-7-9, Austin v. Patrick, 179 Miss. 718, 176 So. 714 (1937). The petition, while inartfully drawn, apparently attempted to file for probate in solemn form, by asking that Mrs. Kountouris as executrix be summoned, and show cause why she should not be dismissed as executrix.
Miss.Code Ann. § 91-7-19 (1972) provides:
Any proponent of a will for probate may, in the first instance, make all interested persons parties to his application to probate the will, and in such case all who are made parties shall be concluded by the probate of the will. At the request of either party to such proceeding, an issue shall be made up and tried by a jury as to whether or not the writing propounded be the will of the alleged testator.
From the record it appears trial counsel for Steve was proceeding under this section. Under this section, either side is enti- *278 tied upon request for a jury to try the issue of whether or not the proposed will was genuine, or devisavit vel non.
Also, under Miss.Code Ann. § 91-7-21 (1972) counsel for Jean had a right to contest the 1981 will, and have the issue of devisavit vel non made up and tried. This statute does not mention trial by jury. As we view the statutes, any right to a jury trial was waived by both parties, not only by failing to file any request with the chancellor for a jury trial, but going through the entire hearing and never making any request. We have interpreted the right to a jury trial under Miss.Code Ann. (1972) § 91-7-19 to mean that unless a party requests a jury trial under this section, the chancellor is not required to impanel a jury. See: Darby v. Arrington, 194 Miss. 123, 11 So.2d 220 (1942); Wall v. Wall, 30 Miss. 91 (Miss.1855).
Counsel for appellant contend Rule 38 of the Mississippi Rules of Civil Procedure require the chancellor to impanel a jury because there had not been a specific written waiver of a jury trial as provided in the Rule. This contention ignores the first paragraph:
(a) Right Preserved. The right of trial by jury as declared by the Constitution or any statute of the State of Mississippi shall be preserved to the parties inviolate.
We also recognize that when a jury is impaneled under this section, its findings are not merely advisory, but binding just the same as the circuit court trial jury. See: Weston v. Lawler’s Estate, 406 So.2d 31 (Miss.1981); Fowler v. Fisher, 353 So.2d 497 (Miss.1977); and Sheehan v. Kearney, 82 Miss. 688, 21 So. 41 (1896).
This again does change our view that if a party desires a jury to try an issue of devisavit vel non he is under a duty to specifically request a jury before any hearing on the matter.
EVIDENCE OF FIDUCIARY RELATIONSHIP BETWEEN EMANUEL AND STEVE
The chancellor ruled the testimony was clear there was a confidential relationship between Steve and his father. We must disagree.
In Hendricks v. James, 421 So.2d 1031, 1041 (Miss.1982), we stated:
Whenever there is a relation between two people in which one person is in a position to exercise a dominant influence upon the other because of the latter’s dependency upon the former, arising either from weakness of mind or body, or through trust, the law does not hesitate to characterize such relationship as fiduciary in character. The basis of this relationship, need not be legal; it may be moral, domestic, or personal. Nor is the law concerned with the source of such relationship. These principles are universally affirmed by courts. [Citations omitted; emphasis added]
We also noted in that opinion that courts of equity carefully refrain from defining with precision the particular bounds of a fiduciary relationship in such a manner other cases might be excluded.
Basically, however, in determining whether or not a fiduciary or confidential relationship existed between two persons, we have looked to see if one person depends upon another. It may or may not be a legal relationship (as the case of an attorney and a client).
If a fiduciary relationship does in fact exist, and the dominant personality is a beneficiary in some transaction in which the presumption of undue influence arises, it is then incumbent upon the beneficiary to show that the grantor or testator had independent counsel and advice from a person wholly disconnected from the beneficiary and devoted wholly to the grantor’s or testator’s interest. Hendricks v. James, supra; Thomas v. Jolly, 251 Miss. 448, 170 So.2d 16 (1964); Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959); Wofford v. Wofford, 244 Miss. 442, 142 So.2d 188 (1962); Ham v. Ham, 146 Miss. 161, 110 So. 583 (1926).
In Murray v. Laird, 446 So.2d 575 (Miss.1984), Justice Prather set forth the criteria *279 which the fact finder should evaluate in determining whether the presumption has been overcome or dissipated by the beneficiary.
No such burden is cast upon a beneficiary, however, where the proof is insufficient to prove a fiduciary relationship existed in fact.
A person of advanced years living in a nursing home is undoubtedly dependent upon others in one degree or another. Yet there is no proof in this record that Emanuel looked to Steve to care for his personal needs, to tend to him, or to handle his affairs. We therefore think the chancellor was manifestly in error in finding from the evidence before him that a confidential relationship existed between Emanuel and Steve.
UNDUE INFLUENCE IN FACT
There is a proper issue of fact on whether or not the will was the product of undue influence, aside from whether a confidential relationship existed between Emanuel and Steve. When we consider Emanuel was undoubtedly dependent on others for his care and well being, was 80 years of age, that Steve’s lawyer prepared the will, that Emanuel made a will which reversed his previous will, that his resentment in being in a nursing home was subject to exploitation, that the attorney notarized a deed which Emanuel was manifestly in no position to acknowledge (according to Stan-field, he was essentially blind, could not read or even see well enough to sign his own name. How could Emanuel acknowledge he signed the deed?). All these factors were sufficient to create a factual issue as to whether the 1981 will was in fact the product of undue influence,
Often we have had occasion to quote from Jamison v. Jamison, 96 Miss. 288, 51 So. 130 (1910):
... It follows, from the very nature of the thing, that evidence to show undue influence must be largely, in effect, circumstantial. It is an intangible thing, which only in the rarest instances is susceptible of what may be termed direct or positive proof. The difficulty is also enhanced by the fact, universally recognized, that he who seeks to use undue influence does so in privacy. He seldom uses brute force or open threats to terrorize his intended victim, and if he does he is careful that no witnesses are about to take note of and testify to that fact. He observes, too, the same precautions if he seeks by cajolery, flattery, or other methods to obtain power and control over the will of another, and direct it improperly to the accomplishment of the purpose which he desires....
See also: Young v. Martin, 239 Miss. 861, 125 So.2d 734 (1961), p. 737 and cases cited; Sanders v. Sanders, 126 Miss. 610, 89 So. 261 (1921); Woodville v. Pizzati, 119 Miss. 442, 81 So. 127 (1919).
Had the chancellor found as a fact the 1981 will was a product of undue influence, aside from any confidential relationship between Emanuel and Steve, we would have to affirm. Since he based his finding on undue influence in part, at the very least, upon first finding that a confidential relationship existed we reverse and remand for a new trial.
In view of the confusion in the trial procedure upon remand upon request by either party the jury trial will be allowed upon the issue of devisavit vel non; and also the issue of whether or not there was a confidential relationship between Emanuel and Steve will not be foreclosed to Jean Koun-touris.
On remand, this action shall, in accordance with Rule 42(a), MRCP, be consolidated with No. 54,967 which is also this day remanded, subject to the holding of separate hearings on separate issues in such consolidated actions as may be appropriate consistent with Rule 42(b), MRCP.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
DAN M. LEE and ANDERSON, JJ., not participating.