WHEAT *et al v.* LACALS *et al.**

(Division B.　May 11, 1925.)

[104 So. 73.　No. 24959.]

1. WILLS. *Revocation worked by inconsistent provisions of subsequent will.*

Later will, commencing, "My last and only will," and giving home to B., with provision that at B.'s death it be sold and proceeds divided among orphan asylums, *held*, without express words of revocation, to have revoked a prior will because of its terms being inconsistent and in conflict with those of the prior will, which gave the home to B. without any limitation.

2. WILLS. *Remainder goes to heirs, devise thereof being void.*

Devise of remainder being void, remainder descends to the heirs; testatrix by the plain terms of the will not intending the first taker to have more than a life estate, and it not being permissible to consider any probability that the limitation over would have been omitted had its invalidity and consequent effect been foreseen.

*Headnotes 1.　Wills, 40 Cyc., p. 1175; 2. Wills, 40 Cyc., p. 1955.

APPEAL from chancery court, of Harrison county.

HON. V. A. GRIFFITH, Chancellor.

Suit by D. L. Wheat and others against Henry J. Lacals and others, heard with a petition for admission of will to probate. From decree dismissing both causes, Wheat and others appeal. Affirmed.

*White & Ford,* for appellants.

There were some bequests in the earlier will not mentioned in the latter, and some in the latter not mentioned in the former, some of the provisions in the latter will being consistent, and some inconsistent, with the disposition of certain property in the former will. Both instruments were admitted to probate in the district court of the Parish of Orleans, the domicile of the testator.

By the first will, the property in Mississippi was disposed of in the following language: "My house and lot 1422 North Rampart Street and house and lot at Biloxi, Mississippi, is given to Mr. S. H. Bell for past favors." By the latter will, it is disposed of by the following language: "My home 1422 North Rampart and my summer home in Biloxi to Mr. S. H. Bell, and at his death they are to be sold and divided to the orphans as follows: Mt. Carmel Asylum, Colored Orphans, Orleans Street." The court will note that in the first instrument the Biloxi property is given to Mr. Bell without any limitation whatever and there are no words of revocation in the second will. The second will does not give to Mr. Bell a life estate in the property, but devises the property to him outright, and then by a provision, void under the Statute of Mortmain, attempts to direct the disposal of the property after his death. If these two instruments are construed together, or if the latter will is construed with reference to the purpose the testator had in mind, as shown by the execution of the first will, we find a devise in fee simple to Mr. Bell with a subsequent void limitation.

When the court finds the true intent of the testator in the execution of any instrument legally executed, the purpose of the investigation is accomplished and the true construction of the will found. In this case, construing the latter will in the light of the former, whether admitted to probate or not, there is shown on the part of the testator, first an unwavering purpose not to die intestate as to this property, and a fixed and unwavering purpose to leave it to Mr. Bell, that purpose at all times being uppermost in her mind, and to that purpose she subordinated every other consideration.

It is certain that the primary purpose of the testator was to give this property to Mr. Bell and that her purpose to give it to charity after his death was an afterthought, secondary and subordinate to her dominant purpose of leaving it to Mr. Bell—a purpose which had rested in her mind at least twelve years.

It is equally certain that she never intended to die intestate as to this property nor did she intend that appellees would ever own it. It follows that the court below by a misapplication of a vague and shadowy rule laid down in *Read* v. *Manning*, 30 Miss. 308, disposed of her property in a manner wholly at variance with any intention ever entertained by the testator. The case of *Re Marx*, L. R. A. 1917 F, 234, was a case involving the same principles involved in this case. The court held that this balance which was undisposed of by reason of the defective gifts to charity would satisfy gifts in the will of 1910 to persons not mentioned in the will of 1913. The court further held that the invalid disposition in the subsequent will did not operate to revoke the gifts in the former will, and that the two wills could be probated together without any complication arising over the disposition of the estate.

In *Altrock* v. *Vandenburgh*, 25 N. Y. Supp. 851, cited in *Re Marx*, the court said: "It would be strange indeed if the wholly inoperative attempted disposition should have the effect nevertheless of destroying a prior valid devise, especially when as in this case, it is apparent

that the testator did not wish to die intestate as to his real estate and that if he had known he. could not legally make the disposition last attempted he would have been content with the first." See, too, *Joiner* v. *Joiner,* 117 Miss. 517; *Wilbourn* v. *Shell,* 59 Miss. 205, 42 Am. Rep. 363; L. R. A. 1916C note at 97; *Greer* v. *McCracken,* 14 Am. Dec. (Tenn.) 758; *Ewell* v. *Sneed,* 136 Tenn. 602, 5 A. L. R. 303; *Graham* v. *Burch,* 28 A. S. R. 353 and note; *Lasier* v. *Wright,* 28 A. L. R. 680, 28 R. C. L. 173; *Lutz Est.,* 6 P. Co. Ct. 294; L. R. A. 1916 C. 103 note; *Garnett* v. *Cowles, et al.,* 39 Miss. 105.

The courts do not usually apply any rule where the application of the rule would make a disposition of the property contrary to the intent of the testator. It cannot be seriously contended that Mrs. Jordan ever intended a revocation of her first will independent of her purpose to devise the property to charity. There was no express revocation of the earlier will, and in working out an implied revocation it resulted in a disposition of her property different from any ever contemplated by the testator.

It is manifest that by the decree of the court below the intention of the testator was not accomplished, but in fact was actually defeated. We do not think that the rule announced in *Read* v. *Manning,* would warrant a construction that would bring about such a result, but if the chancellor was correct in so construing the decision in that case, then, we submit, that case ought to be overruled.

*J. L. Taylor,* for appellees.

The heirs properly contend that the will dated in 1919 revokes the will made in 1907, not in specific language of revocation, but the last will is wholly inconsistent with the first will, because the first will attempted to vest a fee-simple title, while it is manifest that the last will only vested a life estate in S. H. Bell. *Read* v. *Manning,* 30 Miss. 308, is the case that appellee relies upon as de-

cisive of this case, and it might be said, in passing, that this case was followed by the chancellor and so held by him to be decisive of the case. In that case, it was held: "A codicil, duly and legally executed, which makes a disposition of the testator's property, inconsistent with the disposition made in the will, is, to the extent of such inconsistencies, a revocation thereof, without an expression for that purpose; and it will so operate, although the disposition attempted to be made by the codicil, is void for illegality."

Further in *Hairston* v. *Hairston,* 30 Miss. 276, it was also held that: "A will made in favor of a slave, is void, so far as a disposition of the estate is attempted to be made; but if duly executed and containing a clause of revocation of his former testament, it will be operative to that extent." See, also section 5076, Code of 1906 (section 3367, Hemingway's Code.)

The statute provides that a will may be revoked by destroying, by cancelling, by obliterating the same or by subsequent will, codicil or declaration in writing made and executed. From this language, plainly interpreted, and the facts in this case, it appears manifest that the will executed in 1919 revoked the will executed in 1907, and, of course, having revoked the will by subsequent will and the disposition contravening the statutes of Mortmain, it follows, under the statutes of Mortmain, that the heirs take the property.

With further reference to the revocation of the former will because of the inconsistency between it and the latter will, see 28 R. C. L., sec. 32, page 174. For other jurisdictions see *Gardner et al.* v. *McNeil et al.,* 117 Maryland 27, 31 Ann. Cas. 1914 A, page 119.

Argued orally by *W. A. White,* for appellant.

HOLDEN, P. J., delivered the opinion of the court.

This suit involves the construction of the will of Desiree Marie Lacals Jordan, who departed this life April

14, 1921. The case is so well stated by counsel for the appellants that we shall adopt their statement as our own, which is as follows:

"Desiree Marie Lacals Jordan, a resident of New Orleans, La., who owned certain property in Biloxi, Miss., on November 15, 1907, executed a last will and testament in the following language, to-wit:

"'New Orleans, La., November 15, 1907.

"'My house and lot 1422 N. Rampart St. and house and lot at Biloxi, Miss., is to be given to Mr. S. H. Bell for past favors, my jewelry to be divided between the Lacals children, $100 one hundred dollars left to the Mont Carmel Asylum for the Orphans, for prayers for me, $50 fifty dollars to the Colored Home corner of Robertson and Delachise if any money left in bank to be given to Mr. Bell to be divided between the Lacals girls and Theodore $50 fifty dollars to little Daisy and $300 three hundred dollars to my little godchild Willie Letten for his education to be paid monthly to whatever school he attends by my executor, my square of ground down town to be sold and divided between Jimmie, Henry, and Emile Lacals my furniture to be given to Mr. Bell my last and only will.

"'DESIREE MARIE LACALS JORDAN.

"'P. S. I appoint Mr. S. H. Bell, my executor.

DESIREE MARIE LACALS JORDAN.'

"And on January 26, 1919, she executed another will in the following language, to-wit:

"'New Orleans, Jan. 26, 1919.

"'My last and only will. My home 1922 N. Rampart and my summer home in Biloxi to Mr. S. H. Bell and at his death they are to be sold and divided to the orphans as followsMt. Carmel Asylum, Colored Orphans, Orleans street, my godchild Willie Letten when he is of age $300 hundred dollars for his education, $100 dollars to Mrs. O'Leary, 770 Sebar street, Chicago. My land down in the third district sold and divided between Emile Lacals and his daughters my diamonds sold and money in Bank to buy a place in a Metairie Cemetrie my household furni-

139 Miss.—20.

ture to remain as it is until Mr. Bell's death then sold and money put in prayers and flowers every Sunday at my grave.

" 'Signed by myself

" 'DESIREE MARIE LACALS JORDAN.

" 'P. S. $300 hundred dollars for Jemmie Hatton toward his schooling, my old servant Gustine $10 dollars a month until her death.

" 'DESIREE MARIE LACALS JORDAN.

" 'Mr. Samuel H. Bell, my executor,

" 'D. M. JORDAN.'

"The testatrix died April 14, 1921. A petition was filed in the civil district court of New Orleans, the domicile of the decedent, for the probate of said two instruments, as the last will and testament of decedent, and said two instruments were by the civil district court admitted to probate as the last will and testatment of said decedent.

"Thereafter a petition was filed in Harrison county, Miss., by Samuel H. Bell to probate a certified copy of the record in the civil district court of New Orleans, La., as the last will and testament of said decedent, but in presenting said certified copy of the record, the first will was omitted and only the second will was covered by the copy of the record accompanying the petition, and the court was not in any wise advised of the execution of the first will, and said copy of the record covering only the second will was admitted to probate.

"The property, in Mississippi, owned by the decedent, was thereafter purchased by appellant D. L. Wheat from Samuel H. Bell, devisee under the will. Thereafter a petition was filed returnable to the May, 1924, term of the chancery court of Harrison county, to which petition all of the heirs at law of the decedent and all the legatees mentioned in both of said wills were made defendants. Said petition set up the facts above stated and alleged that said second will was admitted to probate in the chancery court of Harrison county and that the first will was omitted through error, and with said petition was

presented a copy of the record of the civil district court of Louisiana admitting to probate both of said wills, and said petition prayed that the action of the chancery court of Harrison county in admitting only one of said wills to probate be reviewed, and that both of said wills be admitted to probate as the last will and testament of the decedent.

"The petition was demurred to by appellees on the ground that the instrument bearing date January 26, 1919, revoked the instrument dated November 15, 1907. The court sustained the demurrer to the petition and gave the petitioner time to amend. While said cause, which was No. 6669 on the docket of the chancery court, was pending and undisposed of, the appellant D. L. Wheat filed a bill in the chancery court of Harrison county, setting up the fact of the execution of the two wills and the probate of the said two wills in the civil district court of New Orleans, and the probate of the last-named instrument by the chancery court of Harrison county, and the pendency of said petition for the probate of said two wills by the chancery court of Harrison county.

"The bill alleged that the complainant D. L. Wheat was the owner of said property, having purchased the same from Samuel H. Bell, who had thereafter died. The bill of complaint alleged that the provision of said will of January 26, 1919, directing that at the death of the said Bell, the said property should be sold and the proceeds divided to Mt. Carmel Aslyum, Colored Orphans, is void for the reason it is in violation of the Statute of Mortmain in the state of Mississippi, and alleged further that as a matter of law the fee-simple title of said property passed by the will of said decedent to the said Bell, and by the deed from the said Bell, to complainant, and that complainant is now the owner in fee simple of the said property, but that the defendants claimed to be the owners thereof and dispute the title of complainant, and that said claim constitutes a cloud upon the title of complainant; some of the said defendants

claiming under said will, and some claiming as heirs at law of the decedent.

"All the parties in interest were made defendants to the bill of complaint, and the bill prayed for a construction of the said two instruments and that the court decree said two instruments to constitute the will of the decedent, but if the court should hold that only one of said instruments constitutes her will that it be construed in the light of the fact that both of said instruments were executed and were preserved by said decedent until her death, and that the court decree that by the said last will and testament of the decedent, the fee-simple title of the property was vested in complainant, and that the title of complainant to said property be confirmed as against the defendants, and that the defendants be perpetually enjoined from asserting any claim or title thereto. To said petition appellee demurred; the principal ground of demurrer being that the instrument of date January 26, 1919, revoked the instrument bearing date November 15, 1907.

"By agreement between counsel in both of said causes, the said two causes, Nos. 7888 and 6669, were, with the consent of the court, consolidated and tried together in order that one decree might be rendered in the matters litigated in both cases, the same as though both were one suit.

"Both causes were heard together, and the court entered a decree whereby he sustained the demurrr in both causes, but found that the petitioner was entitled to a construction of the will, and further found that the will dated January 26, 1919, was wholly inconsistent with the will dated November 15, 1907, and operated to revoke and supersede the first-named will, and found that the said Samuel H. Bell took a life estate in the property in Harrison county, Miss., that the remainder therein sought to be devised to the Mt. Carmel Asylum is in contravention of the Statute of Mortmain, and that the heirs at law of testatrix, appellees in this cause, took the said property by inheritance; and both causes were dis-

missed. The decree recited that the petitioners desiring an appeal with *supersedeas,* and the defendants consenting thereto, the appeal was granted with *supersedeas* upon the petitioners entering into bond in the sum of five hundred dollars. Petitioners thereupon appealed from said decree.

"There were some bequests in the earlier will not mentioned in the latter, and some in the latter not mentioned in the former; some of the provisions in the latter will being consistent, and some inconsistent, with the disposition of certain property in the former will. Both instruments were admitted to probate in the district court of the parish of Orleans, the domicile of the testatrix.

"The court is here concerned only with the disposition of the property situated in Biloxi, Miss., and is not concerned with the rights of the various legatees under the two wills which were admitted to probate in Louisiana.

"By the first will, the property in Mississippi was disposed of in the following language: 'My house and lot 1422 North Rampart street and house and lot at Biloxi, Miss., is given to Mr. S. H. Bell for past favors.' By the latter will, it is disposed of by the following language: 'My home 1422 North Rampart and my summer home in Biloxi to Mr. S. H. Bell, and at his death they are to be sold and divided to the orphans as follows: Mt. Carmel Asylum, Colored Orphans, Orleans street.'

"The bill in cause No. 7888 asked for a construction of the last will, viewed with reference to the execution of the former will, and the preservation of the former will with the latter until the death of the testatrix.

"It will be noted that in the first instrument the Biloxi propery is given to Mr. Bell without any limitation whatever and there are no words of revocation in the second will."

The second will it is contended devises the property to Bell outright, and then by a provision, void under the Statute of Mortmain, directs the disposal of the property after his death.

It is contended by the appellant that if these two instruments are considered and construed together, or if the latter will is construed with reference to the purpose the testatrix had in mind, as shown by the execution of the first will, then the devise is in fee simple to Mr. Bell with a subsequent void limitation. The main argument of counsel is that by construing the two wills together the intent of the testatrix will appear to be that her heirs should receive no part of her estate, but that Bell should take it in fee simple unless the void provision was effective. That is, it is contended the execution of the first will and its preservation along with the second will, and construing the latter will in the light of the former, the intent of the testatrix manifestly appears that she had in mind the unwavering purpose not to die intestate, but meant to leave her property to Mr. Bell in fee simple, if the bequest to the Orphans Asylum could not be carried out.

It is contended the language she used "my summer home in Biloxi to Mr. S. H. Bell and at his death to be sold," etc., carried with it the idea of an absolute gift with an ineffectual attempt to put a limitation upon the gift by a provision which was void; that her purpose was to give her property to Mr. Bell; and that the bequest to charity after his death was an afterthought, subordinate to her dominant purpose of leaving all of it to Mr. Bell, a purpose which had rested in her mind at least twelve years.

It is urged the second will did not revoke the first, because there are no words of revocation therein, and that that being true, the two wills may be considered together and the purpose of the testatrix ascertained as to her real intent in the disposition of her property. It is argued that the rule laid down in *Read* v. *Manning*, 30 Miss. 308, has no application here because the last will did not expressly give to Bell the Biloxi property "for and during his natural life," but gave the property to him outright and then provided it should be sold at his death and the proceeds given to the Orphans Asylum;

that the inconsistency or conflict in the two wills may be reconciled by the light of the first, which was not expressly revoked.

We have carefully considered the interesting contention presented by appellants, but we are unable to distinguish this case, in principle, from the *Read* v. *Manning Case, supra.* The last will, which was executed twelve years subsequent to the first, starts out by saying, "My last and only will." There are no words of revocation in the last will, but we think it revokes the first, without express words of revocation, because the terms of the last will are inconsistent and in conflict with those of the first.

The testatrix intended to curtail or limit by the last will the estate that she had given to Mr. Bell by the first instrument. It is true the limitation was void as being contrary to our Mortmain Statute, nevertheless the testatrix bequeathed only a life estate to Mr. Bell by the last will which revoked the former. The bequest of the remainder estate to the Orphans Asylum being void, the testatrix devised it to no one, and her heirs took under the law; and as we have said, the testatrix not having disposed of it by the will, the remainder estate descends to her heirs.

The law provides the heirs shall take the property of a decedent unless it be devised to others, and unless the testatrix defeats the legal right of the heirs by plainly giving the property to another the heirs will take.

We have been much impressed with the persuasive argument of counsel for appellant that the testatrix did not intend to die partially intestate and that she would have given her property to Mr. Bell in fee if she had known the bequest to the Orphans Asylum would fail. And it may be true the testatrix would not have put the provision in the will that the remainder estate should go to charity if she had known it would have resulted in her relatives receiving the property.

But in construing a will the court must look to see, not what the testatrix might have done or intended not to do

under certain circumstances, but what she actually did by the terms of her will. In this case, she only gave a life estate to Mr. Bell. That is all he could possibly claim under the will; the law sets up title in the heirs to the remainder of the estate. According to the plain terms of the last will, the testatrix did not intend to give Mr. Bell more than a life estate in her property at Biloxi. We are compelled under the law to reach that construction of the will.

In view of this conclusion, the decree of the lower court is affirmed.

*Affirmed.*