ESTATE OF SETH E. CRAWFORD, DECEASED *v.* CRAWFORD, et al.

No. 39728    October 24, 1955    82 So. 2d 823

*Henley, Jones & Woodliff,* Hazlehurst, for appellant.

*W. H. Watkins, Jr.,* Tylertown, for appellees.

APPELLANT IN REPLY.

KYLE, J.

This cause is before us on appeal by Mrs. Freddie Crawford Stackpole, complainant in the court below from a decree of the Chancery Court of Walthall County, confirming the probate of the last will and testament of Seth E. Crawford, deceased, and dismissing with prejudice the appellant's petition for the probate of a prior will.

The record shows that Seth E. Crawford died December 16, 1949. At the time of his death he was a resident citizen of Walthall County, Mississippi. He left an estate which consisted of purchase money notes in the amount of $5400, secured by a mortgage deed of trust on approximately 280 acres of land in Walthall County, and mineral rights in an 80-acre tract of land. He left surviving him as his only heirs and next of kin four brothers and seven sisters. A few days after his death one of his sisters, Mrs. Sallie Perez-Sandi, filed a petition for appointment as administratrix of the estate of

the decedent and was duly appointed and qualified as such. Before the administration of the estate was completed, however, two instruments, each purporting to be the last will and testament of the decedent, were offered for probate. The first instrument dated January 12, 1946 (not including the attestation certificate), is as follows:

### "LAST WILL AND TESTAMENT

"I hereby make and declare this to be my last will and testament and revoke all other wills by me made.

"I hereby give, devise and bequeath to my sister, Freddie Crawford Stackpole, of 3915 Lincoln Way, San Francisco 22, California all my estate, real and personal of whatever nature and description and wherever situated.

"I hereby nominate and appoint Freddie Crawford Stackpole executrix of this, my last will and testament, and to serve as said executrix without bond.

"Dated at San Francisco, California, this 12 day of Jan. 1946.

SETH E. CRAWFORD

The second instrument dated October 10, 1947 (not including the attestation certificate), is as follows:

### "LAST WILL AND TESTAMENT OF SETH E. CRAWFORD

I, the undersigned, SETH E. CRAWFORD, being above the age of twenty-one years and of sound and disposing mind and memory and being conscious of the uncertainties of this life do hereby make execute, utter, publish and declare this document to be my last will and testament and do hereby give, devise and bequeath my property at my death as follows, to-wit:

"(1) I do hereby give, devise and bequeath unto JAMES B. CRAWFORD, all property owned by me whether real or personal, tangible or intangible, of what-

ever nature, kind or character, or wheresoever the same may be found or situate.

"(2) I hereby name, designate and appoint JAMES B. CRAWFORD, as Executor of this My last Will and Testament, he to serve without bond.

"In Witness Whereof I have this day affixed my hand and signature hereunto and the undersigned subscribing witnesses have been requested by me to witness my execution hereof, and I have signed in their presence and they have signed in my presence and in the presence of each other on this the 10th day of October, A.D. 1947.

Seth E. Crawford

Subscribing Witnesses
Buster L. Foil
James Crawford"

The original petition of Mrs. Freddie Crawford Stackpole for the probate of the will dated January 12, 1946, was filed on March 14, 1953, before any distribution of the estate had been made by the administratrix. An amended petition was filed later asking that the will be admitted to probate in solemn form. After the filing of the amended petition for the probate of the will dated January 12, 1946, James B. Crawford, the devisee and legatee named in the second will, filed a petition for the probate of that will. In his petition Crawford renounced his right to take anything under the will, but asked that the will be admitted to probate and that the estate be distributed as though the testator had died intestate. The chancellor signed a decree admitting the latter will to probate in common form. Mrs. Stackpole then filed an amendment to her petition, and in the amendment alleged that the instrument dated October 10, 1947, was insufficient to operate as a will because James B. Crawford, who was the sole devisee and legatee under the will, was a subscribing witness to the will and the devise of the property to him was void.

Upon the hearing of the cause before the chancellor proof of the due execution of each of the two instruments was made by the subscribing witnesses.

It was also shown that at the time the first will was executed the testator was employed as an engineer in the Merchant Marine, and while not on duty lived with his sister, Mrs. Freddie Crawford Stackpole, in the City of San Francisco, California; that a few months after the will was executed, however, the testator left the Merchant Marine and returned to Walthall County, Mississippi, and continued to reside there until his death; that he lived a part of that time with his nephew, James B. Crawford; and it was during that time that he executed the second will.

At the conclusion of the hearing the chancellor found that the will dated January 12, 1946, had been revoked by the later will and was not entitled to be admitted to probate. The chancellor found that the will dated October 10, 1947, was the last will and testament of the decedent and was valid and binding upon all the parties. The chancellor held that the bequest of the property to the testator's nephew, who was one of the subscribing witnesses, being void under the statute, did not invalidate the will, but the bequest itself being void the property should be distributed as intestate property among the legal heirs. A decree was therefore entered confirming the probate of the will dated October 10, 1947, and dismissing the petition for the probate of the prior will. From that decree Mrs. Freddie Crawford Stackpole has prosecuted this appeal.

The sole question presented for our decision on this appeal is, whether the chancellor erred in holding that the prior will was revoked by the later will, notwithstanding the want of capacity of the devisee in the later will to take the estate devised to him, such want of capacity being due to the fact that he was one of the two subscribing witnesses to the will.

We think that the chancellor was correct in his holding that the will dated October 10, 1947, revoked the prior will. In the first will the testator devised and bequeathed his entire estate to his sister, Mrs. Freddie Crawford Stackpole, and appointed her executrix without bond. In the second will the testator devised and bequeathed his entire estate to his nephew, James B. Crawford, and appointed him executor without bond., In each of the two wills the testator undertook to dispose of his entire estate; and the provisions of the later will are wholly inconsistent with the provisions of the earlier will.

From the time of earliest reported cases down to the present, the courts, English and American, have held that the execution of a will disposing of the entire estate of a testator in a manner absolutely inconsistent with the provisions of an earlier will revokes by implication the earlier will, though the will later in time contains no words of revocation, and no mention of the earlier will. Hairston v. Hairston (1855), 30 Miss. 276; Wheat v. Lacals (1925), 139 Miss. 300, 104 So. 73. See also Anno. 51 A.L.R. p. 657. In other words, a will may be just as effectively revoked by a subsequent will making an inconsistent disposition of the property, provided it is of the entire estate, as by a revocation in express terms. Gardner v. McNeal (1911), 117 Md. 27, 82 A. 988, 40 A.L.R. (N.S.) 553, Ann. Cas. 1914A, 119.

An instrument not executed according to the formalities of the statutes governing the execution of wills, and for that reason not entitled to probate, does not impliedly revoke an earlier will, though wholly inconsistent with it. Hairston v. Hairston, supra; Vining v. Hall (1866), 40 Miss. 83; Hawkins v. Duberry (1911), 101 Miss. 17, 57 So. 919.

But the will dated October 10, 1947, which the chancellor admitted to probate, was executed according to the formalities of the statute governing the execution of wills; and it is not claimed that the will was in-

effective for want of attestation. It is true that James B. Crawford, the sole devisee and legatee under the will, was a subscribing witness to the will, and that the devise or bequest made to him was void under the statute. Section 661, Code of 1942. But the annulment of the devise or legacy to him left him competent as to the residue of the will, and so the required number of competent witnesses was furnished, which saved the will, except as to the annulled legacy or devise. Not the whole will, but the devise or bequest to the subscribing witness was void. Swanzy v. Kolb (1908), 94 Miss. 10, 46 So. 549.

██ An instrument properly executed as a will may be admitted to probate if it names or nominates an executor, notwithstanding the disposition of property which it purports to make is ineffective. 57 Am. Jur. p. 55, Wills, par. 27. See also Anno. 147 A.L.R. 644; Re Mahaffay (1925), 72 Mont. 579, 234 P. 838; Re John (1896), 30 Or. 494, 47 P. 341, 50 P. 226, 36 L.R.A. 242; Beattie's Succession (1926), 163 La. 831, 112 So. 802; Cox v. Cox (1890), 101 Mo. 168, 13 S.W. 1055; Re Lawler (1924), 123 Misc. 72, 205 N.Y.S. 271, (affirmed in 215 App. Div. 506, 213 N.Y.S. 723); Reeves v. Duke (1943), 192 Okla. 519, 137 P. 2d 897, 147 A.L.R. 634. Such instrument does not lose its character as a will by reason of the fact that its dispositive provisions fail because they are invalid or unenforceable. Conoway v. Fulmer (1911), 172 Ala. 283, 54 So. 624, 34 L.R.A. (N.S.) 963; Re John, supra.

The appellant's attorneys argue, however, that since there was no express clause of revocation in the later will and that will has been prevented from taking effect in consequence of the incapacity of the person to whom the property was devised to take under the will, the later will did not effect a revocation of the prior will.

██ But the rule is well settled by the decisions of our own Court that a second will inconsistent with the first, perfect in form and execution, but ineffective in its operation as a dispositive instrument, may neverthe-

less be set up as a revocation of the first. Hairston v. Hairston (1855), 30 Miss. 276; Read v. Manning (1855), 30 Miss. 308; Wheat v. Lacals (1925), 139 Miss. 300, 104 So. 73.

In the case of Hairston v. Hairston, supra, which was decided by the High Court of Errors and Appeals in 1855, the Court held that a will made in favor of a slave was void, so far as a disposition of the estate was attempted to be made; but if duly executed, and containing a clause of revocation of a former will, it would be operative to that extent. The record in that case showed that the decedent on September 22, 1841, had made and executed a holographic will, whereby he devised and bequeathed most of his estate to the plaintiffs in error; and that on March 6, 1852, the decedent had made another will, in which he gave most of his property to a slave girl Chrimhiel. The latter will contained no clause of revocation. But on March 7, 1852, the testator made another will revoking all former wills and granting freedom to the slave girl and devising to her all of his estate. The testator died a few hours later. The will of March 7, 1852, was admitted to probate in common form by the probate court. The plaintiffs in error, who were the beneficiaries under the will of 1841, thereupon filed their bill of complaint, seeking to have the probate of the will set aside and to have the will of 1841 established as the last will and testament of the decedent. After the filing of the defendants' answer a jury was empaneled to try the issues as to the mental capacity of the testator and the due execution of each of the wills offered for probate. The jury found that the testator was of sound and disposing mind at the time of the making and execution of each of the instruments, and that both instruments had been executed and attested according to law. The court being satisfied with the verdict of the jury, and being of the opinion that the will of March 7, 1952, was a good revocation of the former will, confirmed the probate of the will of March 7, 1852, and

dismissed the complainants' bill. From that decree the complainants prosecuted a writ of error, and upon review the decree of the lower court was affirmed.

In the argument of the case on appeal it was admitted that the devise of the property to the slave girl was void under the statutes in force at that time; and counsel for the appellants contended that the later will did not operate as a revocation of the former will, for the reason that the later will, having failed as a testamentary act by reason of the incapacity of the devisee to take, could not operate as a revocation of the former will, since the act of revocation was intended to take effect only in the event the new disposition of the estate should be effective. But the Court rejected that argument, and in its opinion said that by a long train of decisions it was well settled that " 'a will duly executed according to the statute, though prevented from taking effect, in consequence of some matters dehors the will, as the incapacity of the person to whom the disposition is made, to take, is a revocation of a former will.' 1 Jarm. Powell on Dev. 586; 1 Lomax on Ex'ors, 52; Eccleston v. Speeke, 3 Mod. R. 258; Onions v. Tyre, 1 Pr. Will. 345; Smith v. Ellis, 1 Ves. 17; Roper v. Radcliffe, 10 Mod. R. 230; Ex parte Ilchester, 7 Ves. jr. 378. And this result will follow where the devises of the last will are inconsistent with the disposition made of the estate by the prior will, although there is no revoking clause. Lomax on Ex'ors. 48, 1 Powell on Dev. 586."

In the case of Read v. Manning, supra, the Court had before it a codicil, duly and legally executed, which made a disposition of the testator's slaves inconsistent with the disposition made in the will. The will in that case had been made in North Carolina in 1836. The codicil was dated July 4, 1845, and contained no express clause of revocation. In his will the testator had given his slaves absolutely to his wife; but by the codicil he gave them to her, "if she should marry and have issue." Otherwise, they should be set free. The Court held that

the codicil, although void to the extent of the attempted emancipation of the slaves, revoked the bequest of them made in the will; and the widow could claim only such interest in them as was vested in her by the terms of the codicil. And the Court in its opinion said: "The dispositions in the codicil are, however, entirely inconsistent with those of the will, and must operate in law as a revocation of the will, to the extent of the inconsistency. And there is no difference in this respect between a will expressly revoking former wills and one containing no such express revocation, provided they both be duly and legally executed, so as to be admitted to probate."

In Wheat v. Lacals, supra, the testatrix left two wills. The first will was dated November 15, 1907. The second will was dated January 26, 1919. The second will contained no express clause of revocation. In the first will the testatrix left her house and lot in the City of New Orleans and her summer home in the City of Biloxi to S. H. Bell "for past favors." She then made certain small bequests to other legatees, and appointed S. H. Bell executor. In the second will executed twelve years later the testatrix left her home in the City of New Orleans and her summer home in Biloxi to S. H. Bell, with the provision that "at his death they are to be sold and divided to the orphans as follows: 'Mt. Carmel Asylum, Colored Orphans, Orleans Street.' " Other small bequests were made in the will to persons named therein. Both wills were admitted to probate in New Orleans, the domicile of the decedent, but the last will only was admitted to probate in Mississippi. A petition was later filed in the chancery court seeking to have the first will also admitted to probate in Mississippi. S. H. Bell died before any action was taken on that petition. But prior to his death Bell had conveyed the house and lot in Biloxi to D. L. Wheat, and after Bell's death Wheat filed a bill in the chancery court seeking to have the two instruments construed and to have both instruments established as the last will and testament of the

decedent. The chancellor found that the will dated February 26, 1919, was wholly inconsistent with the will dated November 15, 1907, and that the later will revoked and superseded the first will, and that S. H. Bell took only a life estate in the property. The chancellor also held that the attempted devise of the remainder interest in the property to Mt. Carmel Asylum was void under the Statute of Mortmain in force at that time, and that the heirs at law of the testatrix took the property by inheritance. And the chancellor dismissed the petition for the probate of the will of November 15, 1907, and also the bill filed by Wheat to have both instruments established as the last will and testament of the decedent.

Upon appeal to this Court it was argued on behalf of the appellant that the second will did not revoke the first, because there were no words of revocation therein, and that the two wills should be admitted to probate and construed together, and if that were done it would appear that the testatrix intended that her heirs should receive no part of her estate, but that Bell should take it in fee simple, if the devise to the orphanage was ineffective.

But the Court held that the later will revoked the prior will because of its terms being inconsistent with and in conflict with those of the prior will. And the Court in its opinion said:

"We have carefully considered the interesting contention presented by the appellants, but we are unable to distinguish this case, in principle, from the Read v. Manning case, supra. The last will, which was executed twelve years subsequent to the first, starts out by saying, 'My last and only will.' There are no words of revocation in the last will, but we think it revokes the first, without express words of revocation, because the terms of the last will are inconsistent and in conflict with those of the first.

"The testatrix intended to curtail or limit by the last will the estate that she had given to Mr. Bell by the first

instrument. It is true the limitation was void as being contrary to our Mortmain Statute, nevertheless the testatrix bequeathed only a life estate to Mr. Bell by the last will which revoked the former. The bequest of the remainder estate to the Orphans Asylum being void, the testatrix devised it to no one, and her heirs took under the law; and as we have said, the testatrix not having disposed of it by the will, the remainder estate descends to her heirs.

"The law provides the heirs shall take the property of a decedent unless it be devised to others, and unless the testatrix defeats the legal right of the heirs by plainly giving the property to another the heirs will take."

The appellant's attorneys admit that the opinions rendered in the Hairston case, the Read case, and the Wheat case, supra, support the chancellor's holding in the case that we now have before us; but they contend that the expressions found in those opinions which are most favorable to the appellees' theory of the case are mere dicta, and that in none of the three cases cited was it necessary for the court to decide the question presented on this appeal.

But we think the rule announced in those cases is controlling in this case. It is true that in the Hairston case there was an express revocation clause in the second will, and the statement in the opinion in that case to the effect that the same result would follow in a case where the devises of the last will were inconsistent with the disposition made of the estate by the prior will, even though there were no revoking clause, was not necessary to a decision of the case. But what was said in the Read case cannot be referred to properly as dicta. In that case there was a codicil, which contained no express clause of revocation, but which did contain dispositions entirely inconsistent with those of the will; and the Court held that the dispositions in the codicil must operate in law as a revocation of the will to the extent of the inconsistency. The Wheat case, in which the Court

reaffirmed the rule laid down in the Read case, was decided seventy years later. If the statement made by the Court in the Hairston case was dicta, the adoption of the principle embodied in that statement as the basis of the decisions of the Court in the Read case and the Wheat case has made that principle a rule of law.

It is next argued that the principle upon which all of those cases were decided is in itself unsound, and that this Court should adopt the more modern rule laid down by the New York Court in Austin v. Oakes (1890), 117 N.Y. 577, 23 N.E. 193; Altrock v. Vandenburgh (1893), 54 N.Y.S.R. 326, 25 N.Y. Supp. 851; and In Re Pilsbury's Will (1906), 50 Misc. 367, 99 N.Y. Supp. 62, and by the English courts in Ward v. Van der Loeff (1924), A. C. 653, and Lamb v. Robinson (1930), 2 Chan. Div. 332.

But we think the decisions of our own Court are sound, and the rule adopted by our own Court in the cases cited above finds ample support in the more recent decisions of other courts.

In the case of Kearns et al. v. Roush et al. (1929), 106 W. Va. 663, 146 S.E. 729, the Court held that a second will, duly executed by the testator as his last will and testament, will revoke a prior will without express terms declaring the same revoked, where the provisions of the second instrument make a different disposition of the entire estate from that made by the prior will; and that the intention of a testator to revoke a will is a circumstance which constitutes the revocation, and when that appears in a subsequent will, it is sufficient, although such subsequent will should not take effect by reason of any uncertainty in a devise or otherwise. In Adams v. Cowan (1933), 160 Va. 1, 168 S. E. 750, the Court held that a subsequent will and codicil, disposing of the entire estate of the testatrix, differing from and in conflict with every disposition of the prior will except a minor one, and void for uncertainty in so far as a clause attempted to deal with the residuum of the testatrix's estate, revoked a prior valid will, the court declaring

that the conclusion that the subsequent will, executed only seven months after the prior will, and materially differing from it, was intended to supersede the prior will, was irresistible. In American National Bank of Camden v. Morgenweck (1933), 114 N. J. Eq. 286, 168 A. 598, the Court held that where the provisions of a codicil conflict with those of a will, the latter are revoked even if parts of the codicil are held invalid.

In the case of Mort et al. v. Trustees of Baker University et al. (1935) 229 Mo. App. 632, 78 S.W. 2d 498, the Court held that although a second will containing a properly and legally executed bequest was void because of the uncertainty as to the beneficiary intended, the second will revoked the first will.

The two leading cases cited by the appellant's attorneys in their brief to support their contention that, the later will, being ineffective to dispose of any part of the testator's property, did not revoke by implication the prior will, are Austin v. Oakes, 117 N. Y. 577, 23 N. E. 193, which was decided by the New York Court in 1890, and Ward v. Van der Loeff, (1924), A.C. 653, which was decided by the House of Lords in 1924. In Austin v. Oakes, the testatrix, having only limited power to appoint by her will the persons to take under her husband's will, executed a will containing a lawful exercise of the power. Afterwards, by a codicil, she attempted to declare a different appointment as to one share by giving it to persons who were not within the class to which, by the terms of the power, she was confined. The court held that, as she had transgressed her authority in the codicil, the codicil was void and inoperative for any purpose, and left the appointment of the will undisturbed. In the case of Ward v. Van der Loeff, there was a gift in trust for the benefit of the testator's wife for life, and after her death in trust for his children, and if there should be no such child, the testator gave his wife a power of appointment among the children of his brothers and sisters, and in default of such appoint-

ment he gave the residuary trust funds to all the children of his brothers and sisters. By a codicil, the testator made the life interest to his wife determinable on her remarriage, unless such remarriage should be with a natural born British subject, and he revoked the power of appointment given to her and declared that after her death the trustees should stand possessed of the residuary trust funds in trust for all or any of the children of his brothers and sisters who should be living at the death of his wife or born at any time afterwards before any one of such children for the time being in existence attained the age of twenty-one years. The gift in the codicil was found to be invalid for remoteness, and it was held that the codicil, while inoperative to that extent, and while it expressly revoked the power of appointment, was not effective to revoke by implication, as the result of its inconsistency, the provisions of the original will regarding the gift over in case there was a failure to appoint.

It can be readily seen that the factual situation in each of those cases was entirely different from the factual situation in the case that we have here.

In each of those cases the same general dispositive scheme was followed in the original and subsequent testamentary instruments; the beneficiaries in the two instruments were for the most part the same persons; and the opinions show that the Court, in seeking to give effect to the presumed intention of the testator, gave due consideration to those factors.

But in the case that we have here the dispositive scheme embodied in the second will is entirely different from the dispositive scheme embodied in the first will. There is nothing in the later will to justify the court in assuming that it was the testator's intention that the provisions of that instrument should be considered as tentative and that they should be operative only in the event they were valid, or that it was the testator's intention that, in the event the later will should

prove to be ineffective to pass the title to the property to the devisee, the earlier will should be deemed to continue in effect. On the contrary, it is manifest from an inspection of the two instruments that the testator intended that the will which he made on October 10, 1947, should revoke and entirely supersede the prior will. The testator's surrounding circumstances had changed at the time he executed the new will. He was no longer employed as an engineer in the Merchant Marine. He had ceased to reside in the home of his sister in California. He had returned to Mississippi and had purchased a tract of land in Walthall County which he continued to own until some time during the fall of 1948. He was living at least a part of the time with his nephew in Walthall County. His sister in California had ceased to be the special object of his bounty, and in the new will the testator devised and bequeathed his property to his nephew and appointed him executor.

The power to revoke a will is expressly given by law to the testator. The statute expressly provides that a devise made by will may be revoked "by subsequent will, codicil, or declaration, in writing, made and executed." Section 658, Code of 1942. A second will is a revocation of the first when it is apparent from the general tenor thereof that such was the intention of the testator. Kearns v. Roush, (1929), 106 W. Va. 633, 146 S.E. 729.

██ From what has been said above, it seems clear that a second will, perfect in form and duly executed, which makes a different disposition of the testator's entire estate from that made by the prior will, may be set up as a revocation of the prior will, although there is no express clause of revocation in the second will; and this is true, even though the dispositive provisions of the second will may be inoperative because of the incapacity of the devisee or legatee to take under the will.

The prior will in this case was revoked by the later will, and there was no error in the chancellor's refusal to admit the prior will to probate.

The decree of the lower court is therefore affirmed.

Affirmed.

*Roberds,* P. J., *Lee, Ethridge* and *Gillespie* JJ., Concur.